UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| James Odell Howell, Jr., | ) | Civil Action No.: 4:13-cv-00295-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Dr. Fred Holland; McLeod Regional | ) | |
| Medical Center of the Pee Dee, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This case was originally filed in the Court of Common Pleas for Florence County, South Carolina. Plaintiff, James Odell Howell, Jr., alleged claims against Defendant, Dr. Fred Holland ("Dr. Holland") and McLeod Regional Medical Center of the Pee Dee, Inc. ("McLeod"). Against McLeod, Plaintiff alleged a federal employment discrimination and retaliation claim pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*. and a state law wrongful discharge claim under South Carolina's Workers' Compensation Statute, S.C. Code Ann. § 41-1-80 *et seq*. Against Dr. Holland, Plaintiff alleged state law claims for assault, intentional infliction of emotional distress, intentional interference with economic relations, and negligence/negligence per se. McLeod removed the case to this Court on the basis of federal question jurisdiction, 28 U.S.C. § 1441, on February 1, 2013.

Pending before the Court are: 1) McLeod's [Docket Entry #55] motion for summary judgment; 2) Dr. Holland's [Docket Entry #56] motion for summary judgment; and 3) Plaintiff's [Docket Entry #57] motion for summary judgment. This matter is before the court with the Report and Recommendation [Docket Entry #92] of Magistrate Judge Thomas E. Rogers filed on August

12, 2014.¹ The Magistrate Judge recommended that McLeod's motion for summary judgment be granted as to Plaintiff's ADA claims and that Plaintiff's motion for summary judgment be denied as to the ADA claims. The Magistrate Judge recommended that the Court decline to exercise supplemental jurisdiction over all remaining state law claims, including the claims on which Dr. Holland moved for summary judgment, and remand the case to the Florence County Court of Common Pleas for further adjudication. Plaintiff timely filed objections [Docket Entry #94] to the Magistrate Judge's Report and Recommendation and McLeod filed a reply to Plaintiff's objections. Neither Dr. Holland nor McLeod filed any objections to the Magistrate Judge's Report and Recommendation.

**Standard of Review**

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a *de novo* determination of those portions of the R & R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The right to *de novo* review may be waived by the failure to file timely objections. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations." *Id.* Moreover, in the absence of

---

¹ This matter was referred to Magistrate Judge Rogers pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and Local Civil Rule 73.02(B)(2)(g).

objections to the R & R, the Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). However, in the absence of objections, the Court must "'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

## **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"Once the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, unsupported speculation, or conclusory

allegations to defeat a motion for summary judgment. *See Baber*, 977 F.2d at 875. Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

**Factual Background**

In 1989, Plaintiff became employed by McLeod as a staff perfusionist. A perfusionist operates the heart and lung machine during open heart surgeries and is responsible for the blood supply to the patient while on bypass. Plaintiff's employment necessarily required him to work closely with open heart surgeons. In either 2000 or 2001, Plaintiff was promoted to Director of Perfusionists at McLeod. In 2007, Dr. Holland joined the cardiothoracic surgical group at McLeod and began working with Plaintiff in the operating room. Plaintiff and Dr. Holland appeared to others to have a good working relationship and also exercised together at the McLeod Health and Fitness Center.

Plaintiff testified and alleged, however, that in April of 2010, he was afraid for his personal safety and the safety of patients while he was working under Dr. Holland's direction. Plaintiff testified that he had seen outbursts by Dr. Holland and confrontations between Dr. Holland and other physicians, during which Dr. Holland used profanity. On one occasion, Dr. Holland approached Plaintiff in a manner that made Plaintiff feel threatened. During an internal investigation into Dr. Holland's conduct arising from another former employee's complaints, other employees of McLeod voiced concerns or complaints about Dr. Holland's conduct.

In September of 2011, Plaintiff raised a concern about Dr. Holland's use of a "pump sucker" device during an open-heart surgery. Plaintiff spoke to Dr. Michael Rose, Vice President of

Surgical Services, about the issue. Dr. Rose sent a letter to Dr. Holland outlining the concerns raised by Plaintiff. Upon receipt of the letter from Dr. Rose, Plaintiff alleges that Dr. Holland called Plaintiff and was extremely aggressive and abusive over the phone. Plaintiff testified and alleged that Dr. Holland essentially told Plaintiff in a very threatening way to watch his back.

After the threatening phone call, Plaintiff informed Shannon Carr, Human Resource Manager, that he refused to work with Dr. Holland. As the Director of Perfusionists, Plaintiff was able to change the perfusionist schedule to avoid working with Dr. Holland. However, because Dr. Holland was performing eighty percent of the open heart surgeries at the time, Plaintiff's caseload was substantially reduced creating a hardship on the other perfusionists, who were left to handle eighty percent of all open heart cases.

From September 2011 through November 2011, McLeod conducted a second internal investigation into the work environment in the cardiovascular operating room. The investigation concluded that the cardiovascular operating room was not a hostile work environment and an equal number of people complained about Dr. Jones, the other cardiothoracic surgeon, as complained about Dr. Holland.

On October 24, 2011, Dr. Holland sent Plaintiff a letter apologizing for the threatening phone call.

Plaintiff first sought treatment for anxiousness, sleeplessness, weight loss, and depression on October 27, 2011. Dr. Krista Kozacki assessed Plaintiff with acute stress and fatigue/malaise. Dr. Kozacki took Plaintiff out of work until January 2, 2012, and recommended Plaintiff obtain legal advice. Plaintiff was placed on medical leave pursuant to the Family Medical Leave Act ("FMLA") beginning November 28, 2011.

In January of 2012, Plaintiff applied for workers' compensation benefits. McLeod admitted that Plaintiff sustained a work place mental injury and was in need of additional treatment. Plaintiff also filed complaints with the S.C. Board of Medical Examiners and the Occupational Safety and Health Administration.

On January 30, 2012, Plaintiff's counsel formally requested accommodations pursuant to the ADA that he not be required or scheduled to work with Dr. Holland. On January 31, 2012, McLeod responded that Plaintiff could return to his regular full duties as Director of Perfusionists and Dr. Irvin would accompany Plaintiff for a limited time in the operating room when Plaintiff was required to work with Dr. Holland. McLeod also responded that Plaintiff could take a leave of absence in accordance with McLeod's Leave of Absence policy until he was comfortable returning to perform the essential functions of his position, which would include working with Dr. Holland. Under McLeod's Leave of Absence policy, Plaintiff could extend his leave of absence beyond FMLA leave until May 28, 2012. Plaintiff declined the accommodation that Dr. Irvin accompany him in the operating room when Plaintiff was scheduled to work with Dr. Holland. Plaintiff, instead, chose to remain on leave.

Plaintiff remained on FMLA leave until February 2012. On February 14, 2012, Plaintiff met with Ms. Carr, Human Resource Manager, and informed her that he was ready to return to work provided he did not have to work with Dr. Holland ever again. On February 15, 2012, Dr. Kozacki released Plaintiff back to work but with the restriction that he not be required to work with Dr. Holland. Dr. Kozacki's work place restriction letter indicated that she had been treating Plaintiff for depression, post-traumatic stress disorder, stress, fatigue/malaise, anxiety, and/or other mental/emotional problems.

On February 21, 2012, Plaintiff's counsel again wrote to McLeod requesting that Plaintiff no longer be required to work with Dr. Holland pursuant to the ADA. The same day McLeod responded that they could not accommodate Plaintiff's request because Dr. Holland performed eighty percent of the open heart surgeries for McLeod and Plaintiff's restriction would make it impossible for him to cover the necessary call for the perfusion department. McLeod stated that a workplace accommodation was being offered through the opportunity to seek a job transfer to a different department in McLeod. McLeod also stated that Plaintiff could remain on a leave of absence under McLeod's Leave of Absence policy until May 28, 2012. The response indicated that unless Plaintiff was able to secure a transfer to another department that could accommodate his restriction by May 28, 2012, his employment with McLeod would be discontinued.

On April 25, 2012, Plaintiff completed an initial inquiry questionnaire with the South Carolina Human Affairs Commission. Declining to return to work with Dr. Holland, Plaintiff did not secure a transfer to another department within McLeod and was terminated effective May 28, 2012. On June 10, 2012, Plaintiff filed a Charge of Discrimination with the EEOC alleging denial of reasonable accommodations due to disability and retaliatory discharge. Plaintiff received a Notice of Right to Sue from SCHAC dated October 30, 2012, and Dismissal and Notice of Rights from the EEOC dated December 21, 2012. This suit followed.

## **Discussion**

I.     <u>Failure to Accommodate Claim under the ADA</u>

The Magistrate Judge recommended that summary judgment be granted as to Plaintiff's failure to accommodate claim because: 1) Plaintiff was not disabled under the ADA; 2) Plaintiff was not a "qualified individual" with a disability; and 3) Plaintiff failed to present evidence sufficient to

show that McLeod failed to make reasonable accommodations that would have allowed Plaintiff to remain in his position as a perfusionist.

The Magistrate Judge found that Plaintiff was not disabled under the ADA because Plaintiff failed to show that being unable to work with Dr. Holland amounted to a substantial limitation of one or more major life activities. The Magistrate Judge stated that "[i]t strains credulity to conclude that Plaintiff is substantially limited in the major life activity of working simply because he cannot work with Dr. Holland." [Report and Recommendation, Docket Entry #92, pg. 13]. The Magistrate Judge cited several cases that held that not being able to work with a particular individual or supervisor does not substantially limit the major life activity of working. *See Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1062 (7th Cir. 2000); *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 525 (7th Cir. 1996); *Hatfield v. Quantum Chem. Corp.*, 920 F. Supp. 108, 110 (S.D. Tex. 1996); *Flynt v. Biogen Idec, Inc.*, No.: 3:11-cv-22-HTW-LRA, 2012 WL 4588570, at *4-5 (S.D. Miss. September 30, 2012). Plaintiff has not attempted to distinguish the cases relied on by the Magistrate Judge, but simply restates the arguments, word for word, that he made in response to McLeod's motion for summary judgment. *Compare* [Docket Entry #69, Plaintiff's Response in Opposition to McLeod's Motion for Summary Judgment, pgs. 14-20] *with* [Docket Entry #94, Plaintiff's Objections to Report and Recommendation, pgs. 1-6]. The Court is not required to conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

In a conclusory fashion, Plaintiff states that since his impairments prevented him from "working, concentrating, thinking, and interacting with others," he was disabled under the ADA.

8

According to Dr. Kozacki, Plaintiff's only restriction, however, was working with Dr. Holland. Dr. Kozacki did not indicate any other restrictions related to any other major life activities other than working with Dr. Holland. To "be substantially limited in the major life activity of working . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice." *Taylor v. Federal Express Corp.*, 429 F.3d 461, 464 (4th Cir. 2005). If jobs utilizing an individual's skills are available, one is not precluded from a substantial class of jobs. *Taylor*, 429 F.3d at 464. In this case, Plaintiff does not dispute that jobs utilizing his individual skills were available. Indeed, Plaintiff found work as a perfusionist at the UVA Medical Center two months before his termination at McLeod and continues to hold that position. [Report and Recommendation, Docket Entry #92, pg. 14]. Plaintiff, therefore, has failed to demonstrate that he was substantially limited in one or more major life activities.

Plaintiff also rehashes his summary judgment argument that he is disabled under the ADA because McLeod *regarded* him as having a disability. "The ADA protects from employment discrimination individuals who are regarded or perceived, albeit erroneously, as having an impairment that substantially limits one or more of the major life activities, just as it protects persons who actually have an impairment that substantially limits one or more of the major life activities." *Runnebaum v. Nationsbank*, 123 F.3d 156, 172 (4th Cir.1997), *overruled on other grounds by Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Plaintiff argues that McLeod

9

regarded him as having a disability because McLeod recognized his impairment but did not accommodate his request to not work with Dr. Holland. Plaintiff argues that viewing the evidence in the light most favorable to Mr. Howell, a reasonable jury could conclude that Plaintiff was discriminated against because he was regarded as being disabled. However, the fact that McLeod welcomed Plaintiff to continue performing as the Director of Perfusionists indicates that McLeod did not regard or perceive Plaintiff as having an impairment that substantially limited a major life activity. Plaintiff has failed to present evidence sufficient to create a genuine issue of material fact that McLeod regarded or perceived that Plaintiff's inability to work with Dr. Holland substantially limited the major life activity of working.

Because Plaintiff has failed to show that he has a disability under the ADA, his failure to accommodate claim fails and summary judgment in favor of McLeod is appropriate. Additionally, the Magistrate Judge found that, assuming Plaintiff does have a disability, he has failed to show that he was a "qualified individual" or that McLeod failed to make a reasonable accommodation that would have allowed Plaintiff to remain in his position as Director of Perfusionists. The Court has reviewed Plaintiff's objections to those portions of the Report and Recommendation and again notes that the objections are word for word restatements of the arguments made in response to McLeod's motion for summary judgment. *Compare* [Docket Entry #69, Plaintiff's Response in Opposition to McLeod's Motion for Summary Judgment, pgs. 18-20] *with* [Docket Entry #94, Plaintiff's Objections to Report and Recommendation, pgs. 3-6]. Specific objections are necessary in order to focus the court's attention on disputed issues. *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985). "A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge." *VanDiver v. Martin*, 304

F.Supp.2d 934, 937 (E.D. Mich. 2004). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context. *VanDiver*, 304 F.Supp.2d at 937. Because general objections do not direct the court's attention to any specific portions of the report, general objections to a magistrate judge's report are tantamount to a failure to object. *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir.1991); *see also Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982) (de novo review not required where objections are general and conclusory). A failure to object waives appellate review. *Wright v. Collins*, 766 F.2d 841, 845-46 (4th Cir.1985). Nevertheless, taking Plaintiff's arguments into consideration, the Court agrees with the Magistrate Judge's analysis and finding that Plaintiff was not a "qualified individual" and that McLeod did not fail to reasonably accommodate Plaintiff's alleged disability. As set forth in the Report and Recommendation, one of the "essential functions" of the job was to work with Dr. Holland who performed the majority of the open heart surgeries, which Plaintiff refused to do.

Accordingly, McLeod is entitled to summary judgment on Plaintiff's failure to accommodate claim under the ADA.

II.     Retaliation Claim under the ADA

The Magistrate Judge found that Plaintiff's retaliation claim was due to be dismissed because Plaintiff could not establish the causation element of his retaliation claim, i.e. that he would not have been terminated "but for" his protected activity. Specifically, the Magistrate Judge found that Plaintiff was warned on February 21, 2012, that his medical leave of absence would expire on May 28, 2012, and if he was unable to secure another position within McLeod that could

11

accommodate his restriction by that date, his employment would be discontinued. The Magistrate Judge stated that "[c]ausation requires the employer's action to be the consequence of the protected activities and of nothing else." *Bray v. Tenax Corp.*, 905 F.Supp. 324, 328 (E.D.N.C. 1995). The Magistrate Judge concluded that Plaintiff's termination was not the consequence of any protected activity because his termination date coincided with the expiration of his medical leave, a date that was decided prior to any protected activity.

Again, Plaintiff's objections restate the arguments submitted to the Magistrate Judge in response to McLeod's motion for summary judgment. *Compare* [Docket Entry #69, Plaintiff's Response in Opposition to McLeod's Motion for Summary Judgment, pgs. 20-23] *with* [Docket Entry #94, Plaintiff's Objections to Report and Recommendation, pgs. 6-9]. Plaintiff does not direct the Court to any specific error in the Magistrate Judge's analysis other than stating a disagreement with the outcome. As he argued before the Magistrate Judge, Plaintiff argues that the temporal proximity between his initial complaints of unlawful conduct, his requests for accommodation, his filing of the initial inquiry with the South Carolina Human Affairs Commission, and his termination is sufficient to satisfy causation.

To establish a prima facie retaliation claim under the ADA, plaintiff must allege (1) that they engaged in protected conduct, (2) that they suffered an adverse action, and (3) that a causal link exists between the protected conduct and the adverse action. *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir.2001). If the plaintiff is successful in establishing a prima facie case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Perry v. Computer Sciences Corp.*, 429 Fed.Appx. 218, 220, 2011 WL 1750293, at *1 (4th Cir. May 9, 2011); *Anderson v. Discovery Communications, LLC*, No.: 11-2195, 2013 WL 1364345, at *5

(4th Cir. May 3, 2013) (citing *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006)); *Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995). If the defendant provides evidence of a nondiscriminatory reason for its action, the plaintiff, who bears the ultimate burden of persuasion, must show by a preponderance of the evidence that the proffered reason was a pretext for discrimination or retaliation. *Perry*, 2011 WL 1750293, at *1 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Laber*, 438 F.3d at 432).

Assuming arguendo that Plaintiff has established a prima facie case of retaliation,[2] Plaintiff has not met his burden of establishing that McLeod's legitimate, nondiscriminatory reason for Plaintiff's termination was pretextual. McLeod states that Plaintiff was terminated consistent with its leave of absence policy after Plaintiff did not return to his position and it was clear that additional leave was pointless. Plaintiff argues that the temporal proximity between his filing of complaints with the S.C. Human Affairs Commission and Equal Employment Opportunity Commission and his termination is sufficient to establish pretext. Plaintiff also argues that comments from Dr. Rose to "be careful" and that there "will be all kinds of collateral damage from these actions" are indicative of pretext. Plaintiff points to his exemplary performance records and the fact that the cardiac

---

[2] The Court agrees with the Magistrate Judge that there is insufficient evidence of a causal connection between Plaintiff's filing of the initial complaint or charge of discrimination and his termination. Additionally, there is some authority that an unreasonable request for accommodation may not even be a "protected activity" to justify a retaliation claim. *See Williams v. Eastside Lumberyard and Supply Co., Inc.*, 190 F. Supp. 2d 1104, 1122 n. 15 (S.D. Ill. 2001) (questioning whether the ADA anti-retaliatory provisions would consider requesting unreasonable accommodations as "protected activity"). Regardless, even assuming Plaintiff can establish a prima facie case of retaliation, as explained below, Plaintiff fails to set forth evidence from which a reasonable juror could conclude that McLeod's stated reason for his termination was pretextual.

13

service line under Dr. Holland generated slightly less than $40,000,000.00 per year for McLeod as further evidence that McLeod's stated reason for his termination was pretextual.

By letter from Ms. Carr dated February 21, 2012, Plaintiff was notified that his employment with McLeod would end upon the expiration of his medical leave if he was unable to secure a transfer to another position within McLeod that could accommodate his inability to work with Dr. Holland. The February 21, 2012 letter from Ms. Carr also indicated that because Dr. Holland performed eighty percent of the open heart surgeries for McLeod, accommodating Plaintiff's request to not work with Dr. Holland would make it impossible to cover the necessary call for the perfusion department. No one disputes that Dr. Holland performed the majority of the surgeries. Ms. Carr informed Plaintiff that returning to his position as Director of Perfusionists was not practical considering Plaintiff's restriction.

Plaintiff's request not to work with Dr. Holland was unreasonable given the sheer volume of operations performed by Dr. Holland. Plaintiff has offered no evidence to dispute McLeod's claim that accommodating Plaintiff's request not to work with Dr. Holland would place an undue burden on the perfusion department making it impossible for the department to meet the demands of the hospital. "[T]he ADA does not require an employer to reallocate essential job functions or assign an employee 'permanent light duty.'" *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 Fed.Appx. 314, 323, 2011 WL 1491230, at *8 (4th Cir. April 20, 2011). "An accommodation that would require other employees to work harder is unreasonable." *Crabill*, 2011 WL 1491230, at *8; *See also Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1125 (10th Cir. 1995) (stating "[a]n accommodation that would result in other employees having to worker harder or longer hours is not required"). McLeod was not required to accommodate Plaintiff's unreasonable request and has offered a

14

legitimate, nondiscriminatory business reason for Plaintiff's termination - his refusal or inability to return to work and perform the essential functions of his job following the expiration of his medical leave.

Plaintiff, on the other hand, has offered nothing more than mere unsupported speculation that McLeod's stated reason for his termination was pretextual. "Unsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987). First, Plaintiff's temporal proximity argument regarding pretext is speculative because the undisputed evidence indicates that McLeod was unaware of Plaintiff's initial SCHAC inquiry until well after Plaintiff's termination. Plaintiff has offered no evidence to suggest that McLeod knew Plaintiff had initiated a formal complaint with SCHAC or the EEOC until McLeod was served with Plaintiff's charge on June 18, 2012. Second, the comments from Dr. Rose are too vague to be of any consequence. As such, they do nothing to discredit McLeod's nondiscriminatory explanation for Plaintiff's termination. Plaintiff does not explain the significance of the amount of money generated by McLeod's cardiac services line but leaves the Court to speculate as to its importance. Finally, there is no dispute that Plaintiff was a good employee for McLeod and that many people complained about Dr. Holland. However, this fact alone does not suggest that McLeod terminated Plaintiff for any reason other than his refusal to return to perform the essential functions of his job after his medical leave expired. Viewing the evidence in the light most favorable to the Plaintiff, no reasonable juror could conclude that McLeod's legitimate, nondiscriminatory reason for terminating Plaintiff was pretextual. *See Anderson*, 477 U.S. at 252 (stating "there must be evidence on which the jury could reasonably find for the plaintiff"). McLeod is, therefore, entitled to summary judgment on Plaintiff's claim of retaliation under the ADA.

III.    State Law Claims

Because summary judgment in favor of McLeod on Plaintiff's ADA claims is appropriate, only state law claims remain.  Plaintiff has alleged a state law wrongful discharge claim under the South Carolina Workers' Compensation Statute, S.C. Code Ann. § 41-1-80 *et seq*, against McLeod and claims for assault, intentional infliction of emotional distress, intentional interference with economic relations, and negligence/negligence per se against Dr. Holland.  The Magistrate Judge recommended declining to retain jurisdiction over the remaining state law claims and remanding the case to the Florence County Court of Common Pleas.  Under 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a claim when the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).  Considering judicial economy, comity, fairness to the Plaintiff, and the fact that remand will not adversely impact the Plaintiff's ability to pursue those claims in the state court system, the Court declines to exercise supplemental jurisdiction over the remaining state law claims against McLeod and Dr. Holland. *See Shekoyan v. Sibley Intern.*, 409 F.3d 414, 424 (D.C. Cir. 2005).

## Conclusion

Having reviewed the record and applicable law, the Court agrees with the outcome reached by the Magistrate Judge.  The Court has reviewed Plaintiff's objections and finds that they are without merit and mere restatements of the arguments previously made to the Magistrate Judge.  The court overrules Plaintiff's objections and adopts and incorporates by reference the Report and Recommendation [Docket Entry #92] of the Magistrate Judge.  Defendant McLeod's [Docket Entry #55] motion for summary judgment is **GRANTED** as to Plaintiff's failure to accommodate and retaliation claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*.

Plaintiff's [Docket Entry #57] motion for summary judgment is **DENIED** as to Plaintiff's failure to accommodate and retaliation claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise jurisdiction over the remaining state law claims against McLeod and Dr. Holland. Because this Court declines to exercise jurisdiction over the remaining state law claims, the Court does not make any findings with respect to the state law claims and declines to rule on either Defendant Holland's [Docket Entry #56] motion for summary judgment or Plaintiff's [Docket Entry #57] motion for summary judgment to the extent it pertains to Plaintiff's state law claims against McLeod and Dr. Holland. The remaining state law claims in this case against McLeod and Dr. Holland are hereby **REMANDED** to the South Carolina Court of Common Pleas for the Twelfth Judicial Circuit in Florence County, where this case was originally filed. A certified copy of this Order remanding the case shall be mailed by the Clerk of this Court to the Clerk of Court for the Twelfth Judicial Circuit in Florence County.

      IT IS SO ORDERED.

February 23, 2015                                                    s/ R. Bryan Harwell
Florence, South Carolina                          R. Bryan Harwell
                                                                       United States District Judge